IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 1, 2006

## OCTAVIAN DEMETRIUS REEVES v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-05-79     Roger A. Page, Judge**

_____

**No. W2005-02244-CCA-R3-PC  - Filed August 22, 2006**

_____

The petitioner, Octavian Demetrius Reeves, appeals the Madison County Circuit Court's dismissal of his petition for post-conviction relief from his conviction for second degree murder and resulting sentence of twenty-five years.  On appeal, the petitioner claims that he received the ineffective assistance of counsel because his attorney failed to cross-examine witnesses thoroughly and failed to file a motion for a change of venue.  We affirm the trial court's dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, Octavian Demetrius Reeves.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Alfred Lynn Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In affirming the conviction and sentence, this court on direct appeal summarized the facts supporting the petitioner's conviction:

> Reuben Fairchild, who was fifteen years old at the time of the victim's death, testified that he was approached by the defendant with a request to write a note for him.  The defendant complained that the [proprietor] of Royal Street Grocery had refused to sell him cigarettes because the defendant did not have an identification card.  The witness wrote a note, as dictated by the defendant, which read as follows:

Hey there. Look--Hey, look here. There's a new moneymaker in town. I'm--I'm shoot up your store cause of your color. You ain't black so get--get the f--k out of my city. Go somewhere else. If you look at someone black--black person run. I will cuss. Don't worry--Don't worry. You won't know who it is, but you have to give it up or else pop pop bang. If that don't work just have to blow up the store and the high school. And I will hate to have--have kill all kids cause the like of you.
P.S. One day you should know I go to that school, so give it up. If you want to talk on the phone here's my number.

The back of the note read:
I'm not scared to get locked up. You don't scare me with that gun you got. Let me shoot up your store. Please save us the--we will do this the 16th or 17th of April. Remember the JCM High School blow up. Only help save the kids. Bye bye sweet thing. Bring it on. The clock is ticking.

Fairfield stated that he added certain portions not included above by inserting the name of a person, "Shawn," and Shawn's telephone number because Fairfield thought Shawn had stolen a CD from him. Fairfield and the defendant later went to Royal Street Grocery, and Fairfield placed the note on the store's security gate.

On the day the defendant and Fairfield delivered the note, the defendant displayed a gun to Fairfield and claimed he would shoot up the store because of being refused in his attempt to buy cigarettes. The defendant also asked Fairfield to serve as his lookout on April 17th, while the defendant carried out his plan. On that date, [Fairfield] obtained a bathroom pass at school and left the classroom, but became scared and returned to class without leaving school. A teacher confirmed issuing the bathroom pass and Fairfield's very brief absence.

Abdalilah Awastira, the owner of Royal Street Grocery, testified by means of an interpreter. He said that on April 17, 2001, the victim, his uncle, was with him behind the counter at Royal Street Grocery. A black male entered the store, crouched down, and fired

two shots. After the first shot, the victim said "please" in English, and the second shot hit the victim in the head. The entire episode occurred within ten seconds. No other customers were in the store. The witness also recalled finding, on his door, a note, which he turned over to the police on the date of its discovery.

Officer Brock Jones, of the Jackson Police Department, stated he was dispatched to Royal Street Grocery on April 9, 2001, and was given the note by Mr. Awastira. The note was then turned over to the evidence department.

Roderick Lewis, a friend of the defendant, saw the defendant on the morning of April 17, 2001. The defendant told Lewis that "these folks are trying to get me for a murder charge." The defendant then said he was "just playing." Later that day while watching a news account of the shooting, Lewis said that the defendant's legs were shaking and that he looked scared. Lewis told of an incident when the defendant was refused the purchase of cigarettes at Royal Street Grocery, and the defendant cursed the store attendant and said he hated him.

In a written statement on April 23rd, the defendant admitted firing his gun once in the grocery. He claimed that his motivation was their refusal to sell him beer on an earlier occasion. He also claimed that a clerk had pointed a shotgun at him at the time of the shooting.

The defendant's father related that he heard the defendant make an oral statement at City Hall, wherein he admitted shooting the victim and expressed remorse.

On April 24th, the defendant gave another written statement confessing that he took an automatic-type gun inside Royal Street Grocery on April 17th. He stated there were two people in the store, and the person by the cash register pulled a gun. The defendant said he ran from the store, pointing the gun at the men behind the counter in an attempt to scare them. The gun fired during this time.

A forensic pathologist, Dr. Cynthia Gardner, stated the cause of death was multiple gunshot wounds. There were two head wounds, with one being consistent with passing through the victim's arm first. The victim's right arm sustained a pass-through bullet wound.

The jury returned a verdict of guilty of second degree murder. After a hearing, the defendant was sentenced to twenty-five years.

State v. Octavian Demetrius Reeves, No. W2002-01313-CCA-R3-CD, Madison County, slip op. at 2-3 (Tenn. Crim. App. Jan. 22, 2004), app. denied (Tenn. May 24, 2004).

On February 28, 2005, the petitioner filed a petition for post-conviction relief alleging constitutional violations and ineffective assistance of counsel. The trial court appointed the petitioner counsel, but counsel did not file an amended petition.

At the post-conviction hearing, the petitioner's trial attorney testified that he was appointed to represent the defendant on a first degree murder charge at the circuit court level. He said he filed a motion for discovery and obtained a copy of the preliminary hearing, which was available to him to aid in the cross-examination of witnesses. He said that he filed a motion to suppress the defendant's confession but that the motion was denied. He said that in the defendant's confession, the defendant said that he fired a shot inside the store but did not mean to kill anybody. He said that he talked to the petitioner about accepting a plea deal to second degree murder but that the petitioner said he was not interested. He testified that he talked to the defendant about the lesser included offenses of first degree murder.

The attorney testified that their theory of the case was that the defendant went into the store and fired the gun but that he did not intend to kill anyone and that the jury should consider the lesser included offenses. He said the jury convicted the defendant of the lesser included offense of second degree murder. He said they did not present any witnesses because the defendant's father was called as a state's witness, and they used the state's witnesses to make their case. He said that there was an outburst in court when the store owner was testifying. He said the prosecutor asked if the victim had said anything and that Tony Ali, a member of the audience, said, "He said please." He said the trial court told Mr. Ali to "stop that or be quiet." He said he did not ask for a mistrial because the testimony of the store owner was "fairly clear as far as what happened," and he did not think the outburst would hurt his client. He said the trial court gave a curative instruction to the jury to disregard Mr. Ali's comment. He said he thought they had a good jury selected and did not think they could have received a better jury if a mistrial were declared.

The attorney acknowledged there was some media coverage on this case because of racial issues. He said that he may have discussed change of venue with the defendant but that this case did not have more publicity than other high profile cases. He said he did not think the media coverage would prevent the defendant from getting a fair trial. He said that during sentencing, he argued that mitigating factors applied. He said that he could not think of anything he would have done differently in this case.

On cross-examination, the petitioner's attorney acknowledged that the store owner testified for the state and had to have an interpreter. He said he did not cross-examine the store owner, Mr. Awastira, because after hearing the store owner's testimony, he did not believe he "was going to

make any points by keeping him on the stand or cross-examining him." He said that he did not believe the store owner's testimony had "created a lot of damage" to the defense's theory that this was not a premeditated killing and that he believed by cross-examining the store owner he would have caused "more problems than I could rectify." He acknowledged he did not object to the leading questions asked of Lieutenant Holt or Ms. Pruitt, who were witnesses called to establish the chain of custody of evidence. He said "there's no point in just objecting to everything if it's run-of-the-mill things that are going to be proved anyway." He acknowledged the trial court instructed the jury on first degree murder, second degree murder, and reckless homicide. He said there was nothing in this case that would support adequate provocation for voluntary manslaughter as a lesser included offense. The assistant district attorney entered portions of the transcript showing the outburst, the testimony of Lt. Holt, and the testimony of the store owner as exhibits to the hearing.

After considering the evidence, the trial court issued an order denying the petitioner post-conviction relief and dismissing the petition. In its order, the trial court stated

> 2. Failure to interview or cross-examine Abdaliah Awastira.
> Trial counsel testified that he did not cross examine Mr. Awastira because the witness' testimony did not add anything that had not already been presented. Because the witness testified through an interpreter, counsel felt that conducting a cross-examination when there were no points to be made would be futile. The Court finds that trial counsel considered the options and made a strategic decision not to cross-examine the witness. Counsel performed effectively, and the petitioner was not prejudiced thereby. This issue is meritless.
>
> . . . .
>
> 5. Failure to question Lt. Michael Holt.
> Trial counsel testified that he declined to cross-examine one of the state's witnesses, Lt. Michael Holt, because his testimony pertained only to chain of custody issues. A review of the transcript page supplied by petitioner supports trial counsel's decision. Counsel is not obligated to conduct a cross-examination of every witness. [The petitioner's attorney] exercised sound professional judgment in electing not to cross-examine Lt. Holt. This claim is denied.
>
> . . . .
>
> 7. Failure to move for a change of venue based on pretrial publicity.
> Trial counsel testified that he had been involved in other cases in which there had been more pretrial publicity than in this case. In those cases, counsel's experience was that the trial court would take

the motion for change of venue under advisement. The judge would then try to seat a jury that had not been tainted by pretrial publicity.

In this matter, trial counsel was satisfied that the jury had not been affected by pretrial publicity. Petitioner was not prejudiced by counsel's strategic decision. This claim is denied.

. . . .

It is this Court's opinion, based on the entire record in this cause, the credibility of the witnesses in open court, and all of the evidence presented, that this Petitioner has not met his burden of proof to show that he is entitled to relief by clear and convincing evidence.

The petitioner contends that he received the ineffective assistance of counsel because (1) the petitioner's attorney failed to cross-examine Mr. Awastira and Lt. Holt, and (2) the petitioner's attorney failed to file a motion for change of venue. The state responds that the trial court properly denied the petition for post-conviction relief because the defendant failed to offer any proof that he was prejudiced by his attorney's handling of witnesses and failed to introduce any evidence concerning the amount of pretrial publicity involving this case. The state contends the petitioner failed to show that counsel was ineffective or that he was prejudiced.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The

performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690, 104 S. Ct. at 2066. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S. Ct. at 2068. Failure to satisfy either prong results in the denial of relief. Id. at 697, 104 S. Ct. at 2069.

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See DeCoster, 487 F.2d at 1201.

## I. CROSS-EXAMINATION OF WITNESSES

The petitioner contends that his attorney was ineffective because of his trial strategy. He contends his attorney "should have thoroughly cross examined all of the witnesses in this case including Mr. Awastira." He argues that his attorney's strategic decision not to cross-examine witnesses, including Lt. Holt, was "futile to his case" and that he could have been convicted of an even lesser included offense. The petitioner contends he established deficient representation and prejudice resulting from the deficiency.

The state asserts that during the post-conviction hearing, the petitioner failed to offer any proof that would support his claim that his attorney's handling of Mr. Awastira or Lt. Holt was prejudicial or deficient. The state contends the petitioner failed to show what, if any, questions could have been asked of these witnesses and how those questions would have affected the outcome of the trial. The state asserts the petitioner did not call either witness at the post-conviction hearing. The state contends that the petitioner "merely concludes that the decision not to cross-examine these witnesses was 'futile to his case and chances of being convicted or even [sic] a lesser included offense.'" The state contends the petitioner failed to show how counsel was ineffective in handling these witnesses, and therefore, failed to meet his burden.

At the post-conviction hearing, the petitioner's attorney testified that he did not cross-examine Mr. Awastira because "[i]t did not appear to me, after listening to the testimony of the store owner, that I was going to make any points by keeping him on the stand or cross-examining him." He also testified that Lt. Holt's testimony was about the chain of custody of evidence and that "there's no point in just objecting to everything if it's run-of-the-mill things that are going to be proved anyway." The petitioner failed to introduce any evidence as to how his attorney's trial strategy in not cross-examining these witnesses prejudiced his defense. The petitioner failed to call either Mr. Awastira or Lt. Holt as witnesses. See Black v. State, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990) ("When a petitioner contends that his trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). The post-conviction court found that the petitioner's attorney performed effectively. We conclude that the record supports the trial court's finding and that the petitioner is not entitled to relief on this issue.

## II. CHANGE OF VENUE

The petitioner contends his attorney should have made a motion for a change of venue based on the pretrial publicity and in failing to make the motion, his attorney's strategy proved adverse to his case. The petitioner contends he established deficient representation and prejudice resulting from the deficiency.

The state asserts the petitioner failed to introduce any proof during the post-conviction hearing concerning the amount of pretrial publicity. It also asserts the only testimony concerning publicity given by the petitioner's attorney was that the pretrial publicity in this case was no greater than any other case. The state contends that other than asking one question about pretrial publicity, the petitioner failed to offer any proof showing the amount or type of publicity his case received before trial. The state contends the petitioner failed to offer any proof to either the post-conviction court or on appeal that would support his claim.

At the post-conviction hearing, the petitioner failed to introduce any evidence of pretrial publicity. The petitioner's attorney testified that

> It was not really a case that had more publicity than a lot of the other high profile cases we've had here. It did have a fair amount of publicity, as I recall, for the reasons that you've suggested. But I did not think that was going to prevent him from getting a fair trial, based on the makeup of the jury and the way jurors are pretty open-minded around here.

The post-conviction court found that the petitioner failed to prove he was prejudiced by his attorney's strategic decision. We conclude that the record supports the trial court's finding and that the petitioner is not entitled to relief on this issue.

## CONCLUSION

Based upon the foregoing and the record as a whole, we affirm the trial court's dismissal of the petition for post-conviction relief.

_____
JOSEPH M. TIPTON, JUDGE